An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

1ST COMMERCE BANK,
Appellant,
    vs.
JAMES J. STEVINSON, A
CALIFORNIA CORPORATION AND
GBRK, LLC, A CALIFORNIA LIMITED
LIABILITY COMPANY,
Respondents.

No. 54713



FILED

FEB 13 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

Appeal from a district court summary judgment and order denying a motion for further discovery. Eighth Judicial District Court, Clark County; Linda Marie Bell, Judge.

### FACTS AND PROCEDURAL HISTORY

This appeal concerns the scope and effect of a tenant estoppel certificate that appellant 1st Commerce Bank, as tenant, gave respondent Stevinson Corporation, as successor to Camino al Norte, the original lessor, when Stevinson was negotiating the purchase of the building from Camino al Norte. The estoppel certificate affirmed that there were no uncured defaults, conditions, or offsets affecting the enforceability of the lease. After Stevinson bought the building, 1st Commerce Bank demanded that Stevinson pay a tenant improvement allowance it claimed was due under the lease. Because the estoppel certificate said nothing about an unpaid tenant improvement allowance being owed, Stevinson refused.

13-04713

The tenant improvement allowance underlying this appeal was provided for in the lease agreement between 1st Commerce Bank and Camino Al Norte. 1st Commerce exhausted the allowance, and on December 4, 2006, 1st Commerce President Al Gourrier completed a walk-through memorandum acknowledging substantial completion of the construction. 1st Commerce took possession of the property on that day.

Four months later, in April 2007, Camino Al Norte entered into negotiations to sell the building to Stevinson. Before completing the purchase, Stevinson asked for estoppel certificates from the building's tenants. 1st Commerce initially refused, citing Camino Al Norte's failure to have paid certain broker's fees associated with the lease. Of note, 1st Commerce said nothing about an unpaid tenant improvement allowance.

Camino Al Norte paid the broker's fees, whereupon 1st Commerce executed the estoppel certificate. In the certificate, 1st Commerce represented that (1) the lease was in full force and effect; (2) "there are no uncured defaults by either Tenant or Landlord" under the lease; (3) "all conditions of said lease to be performed by Landlord and necessary to the enforceability of said lease have been satisfied"; and (4) "there are no existing . . . offsets which the undersigned has against the enforcement of said lease by Landlord." Stevinson completed the purchase of the property and assumed the lease, replacing Camino Al Norte as 1st Commerce's landlord.

Roughly a year after Stevinson bought the property, during an internal audit of its lease, 1st Commerce discovered an expended-but-unreimbursed tenant improvement claim for $217,320.00. It asked Stevinson to pay this claim. Citing the estoppel certificate, Stevinson refused, and 1st Commerce sued.

After eight months of discovery, Stevinson moved for summary judgment, arguing that the estoppel certificate barred 1st Commerce's claim. Stevinson supported its motion with the estoppel certificate, the lease, the tenant improvement work letter, 1st Commerce's answers to 32 requests for admission, and an affidavit from Stevinson's outside financial advisor, Mark Burrell, attesting to his due diligence in closing the purchase of the building and the fact the unreimbursed tenant allowance had not been brought to his attention before the close. Stevinson also submitted invoices and releases indicating that 1st Commerce had expended over $400,000 in tenant improvements by December 2006 and the move-in walk-through memorandum signed by 1st Commerce President Al Gourrier.

1st Commerce opposed Stevinson's motion for summary judgment based on a declaration from its president, Al Gourrier, who had signed the estoppel certificate. The Gourrier declaration states that, "The Bank disputes [Stevinson's] contention that they 'had no knowledge of the alleged non-repayment' of the tenant improvement allowance . . . ." According to Gourrier, "[t]he Bank has known since the commencement of the Lease that it has a contractual right to the unpaid tenant improvement allowance, especially since it is set out clearly and specifically in the Lease" and Stevinson, had it "reviewed the Lease[,] . . . would have become aware of the [outstanding] tenant improvement allowance" owed. 1st Commerce also argued that, by its terms, the estoppel certificate did not require disclosure of the unpaid tenant improvement allowance. Citing NRCP 56(f), 1st Commerce included in its opposition a request for additional time for discovery.

 

The district court granted Stevinson's motion for summary judgment. It held that the "unpaid tenant expense incurred by the bank during its lease with Camino Al Norte constitutes both a condition of the lease to be performed by the landlord and a default under the lease agreement" that 1st Commerce should have listed on the estoppel certificate. While it acknowledged that the certificate did not specifically query the status of the tenant improvement allowance, it held that "it is not necessary for an estoppel certificate to address each and every possible claim against a landlord in order for the certificate to bar a subsequent tenant claim," and that, under Yee v. Weiss, 110 Nev. 657, 662, 877 P.2d 510, 513 (1994), Stevinson was entitled to rely on 1st Commerce's representations in the estoppel certificate. The district court did not explicitly address 1st Commerce's NRCP 56(f) request.

1st Commerce appeals and we affirm.

DISCUSSION

"Summary judgment is appropriate under NRCP 56 when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly before the court demonstrate that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." Wood v. Safeway, Inc., 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005). After the moving party has proffered evidence sufficient to support summary judgment, the party opposing summary judgment is obligated to, by affidavit or otherwise, "set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against [it]." Id. at 732, 121 P.3d at 1031. Summary judgment can be appropriate in the estoppel setting. LaForge v. State, University System, 116 Nev. 415, 419, 997 P.2d 130, 133 (2000); Resolution Trust Corp. v. District of Columbia, 78 F.3d 606, 610 (D.C. Cir.

1996) (upholding summary judgment based on representations made in an estoppel certificate).

## Summary judgment was proper based on the estoppel certificate

1st Commerce argues that the estoppel certificate did not apply to the unpaid tenant reimbursement allowance because the latter was not a default, condition, or offset under the lease. Alternatively, it argues that its omission of the allowance is excusable because the certificate was ambiguous.

While estoppel certificates are not contracts, courts rely on fundamental rules of contract interpretation in construing and enforcing them. See Bed N' Bath v. Spring Valley Partnership, 586 N.Y.S.2d 416, 418 (App. Div. 1992) (applying the "familiar canon of construction preferring an interpretation of an instrument that avoids inconsistencies and gives meaning to all of its terms"). We do the same, see Yee, 110 Nev. at 662, 877 P.2d at 513, and conclude that, on the record presented, Stevinson was entitled to summary judgment. While the certificate did not specifically ask about unpaid tenant improvement allowances, the allowance was an offset to rent and the landlord's failure to pay the allowance when due constituted a default under the lease. As such, it was incumbent on 1st Commerce to list it. 1st Commerce's refusal to execute the estoppel certificate until the broker's fee issue was resolved demonstrates its understanding of the breadth and importance of the certificate.[1]

---

[1]We agree with 1st Commerce that the district court erred in deeming payment of the tenant improvement allowance to be a condition to enforceability of the lease. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before

*continued on next page . . .*

The record includes a work letter concerning the tenant improvements that, as a cross-referenced and contemporaneous document, is interpreted as part of the lease. Lincoln Welding Works, Inc. v. Ramirez, 98 Nev. 342, 345, 647 P.2d 381, 383 (1982) (cross-referenced and contemporaneous documents must be interpreted as a single instrument). Under paragraph (B)(2) of the work letter:

> Landlord shall contribute a tenant improvement allowance of **$40.00 per usable square feet, which totals approximately $217,320** (the "Tenant Improvement Allowance"). Tenant agrees to pay any and all costs above the Tenant Improvement Allowance. Tenant acknowledges that [it] shall **NOT** be entitled to any payment or rent reduction from the Landlord for any part of the Tenant Improvement Allowances not utilized by the Tenant improvement.

(Emphases in original). This language indicates that the parties understood that utilized tenant improvements would entitle 1st Commerce to a rent reduction, or offset, up to the amount spent or the amount of the allowance, whichever was less. Black's Law Dictionary 1195 (9th ed. 2009) (defining offset as "[s]omething (such as an amount or claim) that

---

. . . continued

performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1981). For example, section 13 of the work letter (if landlord fails to complete construction on time the tenant may terminate) and section 1 of the addendum to the lease create express conditions (the terms of the lease are contingent upon tenant obtaining regulatory approval). Because failure to pay the allowance was not expressed as a condition, we interpret it as a promise. See id. § 227 (indicating when it is doubtful whether a contract term is a promise or a condition, the general rule is to interpret the term as a promise).

 

balances or compensates for something else"). Thus, the tenant improvement allowance should have been listed under paragraph 9 of the certificate, in which 1st Commerce certified that there were "no existing defenses or offsets . . . against the enforcement of said lease by Landlord."

Furthermore, the lease and work letter, identified as exhibit "C" in the lease, make failure to pay the tenant improvement allowance a default under the lease. Paragraph 6 of the lease notes: "Landlord agrees to install, at Landlord's cost and expense, except as otherwise stated herein, the improvements described in Exhibit 'C' attached hereto." The work letter sets out specifications[2] for building improvements and obligates the landlord, under paragraph 13, to complete construction and meet all occupancy requirements. Paragraphs 7 and 9 of the work letter contemplate using the "landlord's lender" as a source of financing up to the full value of the tenant improvement allowance. And, paragraph 17 makes the landlord's failure to complete the work letter's directives, including paying for tenant improvements, a default under the lease:

> Any default by Tenant OR Landlord under the term of this Work Letter shall constitute a default under the Lease and shall entitle Landlord or Tenant (as the case may be) to exercise all remedies set forth therein. Both Tenant and Landlord agree to use reasonable diligence in performing all of the respective obligations and duties under this Work letter and in proceeding

---

[2]It is not clear these specifications controlled. The addendum to the lease, executed at the same time as the lease and work letter, give 1st Commerce the ability to apply the tenant improvement allowance at its sole discretion.

the construction and completion of all Tenant Improvements in the premises.

Despite these provisions in the contract documents, 1st Commerce argues the landlord's failure to pay tenant improvements was not a default because (1) under the work letter there was not a date by which the landlord had to pay the allowance (the letter required "reasonable diligence"); and (2) even if failure to pay tenant improvements was a default, it never ripened into an <u>uncured</u> default, which is what the estoppel certificate asked about. On this second point, 1st Commerce explains that the lease gives the landlord 30 days upon notice to cure any default, a notice 1st Commerce never sent. As to the offset provision of the estoppel certificate, 1st Commerce argues that this provision is ambiguous because it only asks for representations that go to "enforcement of the lease," not all offsets.[3]

1st Commerce's strained reading of the contract documents and estoppel certificate fails. Not only, as just discussed, is 1st Commerce's reading contrary to the underlying contract documents, it is not the reading evidenced by 1st Commerce's conduct. <u>See</u> 11 Richard A. Lord, <u>Williston on Contracts</u> § 32:14 (4th ed. 1999) (explaining that a party's conduct before a dispute arises is evidence of its understanding of a contract's terms); <u>Shelton v. Shelton</u>, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003) (providing that acts by a party indicates its understanding of the contract terms and may resolve otherwise ambiguous contract language).

---

[3]It also argues that the term offset in the certificate really referred to the term of art "setoff." <u>See</u> <u>Aviation Ventures v. Joan Morris, Inc.</u>, 121 Nev. 113, 120, 110 P.3d 59, 63-64 (2005). This argument lacks merit.

 

When asked to execute the certificate, 1st Commerce initially refused, citing to the fact it was owed an unpaid broker's fee that the estoppel certificate would preclude it from recovering. This demonstrates that 1st Commerce understood the terms of the estoppel certificate to require a broad range of disclosures against the landlord to Stevinson, the successor landlord, whether preceded by demand, failure-to-cure, and the other provisions governing defaults. As with the tenant allowance, the estoppel certificate did not ask about broker's fees specifically—as 1st Commerce admits, the broker's fees are not even part of the lease.[4] 1st Commerce's conduct evidences its understanding that the certificate applied to unlisted, non-lease rights, contrary to the strict reading 1st Commerce now asserts.

The fact that 1st Commerce did not know about the accrued but unreimbursed tenant improvement allowance until it surfaced in its later audit of the lease does not assist 1st Commerce. A party who executes an estoppel certificate is not affirmatively waiving its rights, such that its lack of knowledge of an existing but overlooked claim defeats enforcement, as 1st Commerce argues. Instead, the signer undertakes a responsibility to represent to a relying party all claims of which it knew or should have known; the signer has a "duty to inquire and determine,

---

[4]1st Commerce attempts to distinguish the broker's fee from the allowance. It argues that, because the broker's fee was not part of the lease, it could not execute the certificate without collecting the fee. On the other hand, it argues, the allowance was in the lease and it could execute the certificate without mentioning its accrued right to reimbursement. We find no merit to this distinction. The certificate specifically asked for information pertaining to the lease.



insofar as reasonably possible, what claims exist." K's Merchandise Mart, Inc. v. Northgate Ltd. P'ship, 835 N.E.2d 965, 972 (Ill. App. Ct. 2005); see also Piggly Wiggly v. Wolpert Associates, 519 So.2d 371, 372-73 (La. Ct. App. 1988) (providing that a tenant has a duty to document rights of which it knows or should know when executing estoppel certificates); Yee, 110 Nev. at 662, 877 P.2d at 513. In view of the certificate's conventionally understood purpose, 1st Commerce's contractual obligation under the lease to present a certificate upon which a purchaser could rely, and its knowledge of its right under the lease to the allowance,[5] 1st Commerce's waiver argument fails.[6]

---

[5]In his declaration opposing summary judgment, 1st Commerce president Al Gourrier stated: "The Bank has known since the commencement of the Lease that it has a contractual right to the unpaid tenant improvement allowance." This admission, coupled with the walk-through memorandum dated four months before the estoppel certificate was issued and the assertion of the work's substantial completion prevents any argument that the claim had not accrued when the certificate was given.

[6]We also reject 1st Commerce's argument that the estoppel certificate should be strictly construed against the drafter. This rule only applies "so long as other factors are not decisive." Restatement (Second) Contracts § 206 cmt. a (1981); see also 5 Margaret N. Kniffin, Corbin on Contracts § 24.27 (rev. ed. 1998) (explaining that the interpretation of contra proferentem is employed only "[a]fter the court has examined all of the other factors that affect the search for the parties' intended meaning" and there remains a "question as to what meaning was intended"). Here, the wording of the contract documents and estoppel certificate, together with 1st Commerce's conduct, are decisive.

"[T]he general purpose of an estoppel certificate . . . is to assure one or both parties to an agreement that there are no facts known to one and not the other that might affect the desirability of entering into the agreement, and to prevent the assertion of different facts at a later date." Lawyers Title Ins. v. Honolulu Fed. S&L, 900 F.2d 159, 163 (9th Cir. 1990); see also Black's Law Dictionary 551 (6th ed. 1990) (An estoppel certificate is "[a] signed statement by a party, such as a tenant or a mortgagee, certifying for another's benefit that certain statement of facts are correct, as of the date of the statement, such as that a lease exists, that there are no defaults, and that rent is paid to a certain date."); see also 31 C.J.S. Estoppel § 16 (2011) ("[A] party who executes an estoppel certificate will not be allowed to raise claims of which it knew or should have known at the time the certificate was executed."). And when the parties assign a particular purpose to an instrument, this court is compelled to interpret the instrument in light of that purpose, Restatement (Second) of Contracts § 202(1) (1981) (establishing that contracts must be interpreted in light of their principal purpose), as we do here.

The district court did not err in not granting 1st Commerce's request for additional time to generate a genuine issue of material fact

1st Commerce next argues that potential issues of fact exist as to what Stevinson knew or should have known, and when, that should have defeated summary judgment. Cf. Hammelburger v. Foursome Inn Corp., 431 N.E.2d 278, 280 (1981) (explaining if party seeking estoppel knows of a defect in the formation of estoppel certificate, it cannot later avail itself of the estopping effect as to that defect); 7979 Airport Garage v. Dollar Rent A Car, 245 S.W.3d 488, 495 (Tex. App. 2007) (providing that party seeking enforcement of an estoppel certificate cannot succeed when

it knew of a right not listed in the certificate).[7]  The problem with this argument is that 1st Commerce provided no evidence to support an actual or even constructive knowledge defense to Stevinson's properly supported summary judgment motion, which included an affidavit attesting to Stevinson's due diligence.  Without evidence, 1st Commerce's bald suspicion, articulated by its president Al Gourrier, that Stevinson knew or should have known of the accrued allowance is not sufficient to escape summary judgment.  Loudermilk v. Best Pallet Co., LLC, 636 F.3d 312, 315 (7th Cir. 2011) ("[S]uspicion is not enough to get past a motion for summary judgment."); Wood, 121 Nev. at 732, 121 P.3d at 1031 (The party opposing summary judgment is obligated to, by affidavit or otherwise, "set

---

[7]We recognize the split of authority that exists as to whether constructive knowledge, as opposed to actual knowledge, will defeat reliance on an estoppel certificate.  Compare Plaza Freeway, L.P. v. First Mountain Bank, 96 Cal. Rptr. 2d 865, 868 (Ct. App. 2000) (explaining that a party is estopped from contracting material terms of lease contract), and Hammelburger, 431 N.E.2d at 280 (explaining situations when an estoppel certificate may be invalidated), and Bush Realty Assocs. v. A.M. Cosmetics, Inc., 770 N.Y.S.2d 19, 20 (App. Div. 2003) (stating that a party may escape its representations only if "there is an equitable basis to invalidate the certificate" or the party seeking enforcement took with knowledge of "some defect in the manner in which the certificate was obtained"), with KPW Assocs. v. S.S. Kresge Co., 535 So.2d 1173, 1180 (La. Ct. App. 1988) (providing that a party did not exercise "such diligence as would reasonably be expected" when it possessed, but apparently did not read, a report that detailed the problems with the parking lot), and Perpetual Bldg. Ltd. Ptshp. v. Dist. of Columbia, 618 F. Supp. 603, 615 (D.D.C. 1985) (explaining that reliance on an estoppel certificate must be reasonable).  It is not necessary to resolve this split in the context of this case given the absence of admissible evidence to suggest that Stevinson knew or should have known of the outstanding unpaid tenant improvement allowance.

forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against [it]"); Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 302, 662 P.2d 610, 621 (1983) (The nonmoving party "'is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture.'" (quoting Hahn v. Sargent, 523 F.2d 461, 468 (1st Cir. 1975))). Especially is this true given the Gourrier declaration, in which Gourrier acknowledges his awareness of the tenant improvement allowance provision when he executed the estoppel certificate and that, notwithstanding this knowledge, 1st Commerce failed to investigate, discover, and submit the claim for remaining sums due until an internal audit, months later, turned up a balance owed. See Yee, 110 Nev. at 662, 877 P.2d at 513 (holding as a matter of law that the recipient of an estoppel certificate signed by a tenant who signed it without reading it was entitled to rely on the certificate). 1st Commerce, in sum, adduced no evidence sufficient to create a genuine issue of material fact given the Burrell declaration and the documents put forward in support of summary judgment.

Nor did the district court abuse its discretion in not granting 1st Commerce's request, citing NRCP 56(f), for further discovery. The Gourrier declaration, while it expresses a desire to "test" the reasonableness of Stevinson's reliance on its estoppel certificate, failed to meet the requirements of NRCP 56(f), see Choy v. Ameristar Casinos, Inc., 127 Nev. ___, ___, 265 P.3d 698, 700 (2011), rehearing denied, 128 Nev. ___, 279 P.3d 191 (2012), much less to suggest avenues of discovery, not previously explored, that would allow 1st Commerce to overcome this court's holding in Yee, 110 Nev. at 662, 877 P.2d at 513, given the uncontested record facts.

For these reasons, we

ORDER the judgment of the district court AFFIRMED.

_____, C. J.
Pickering

_____, J.
Gibbons

_____, J.
Cherry

cc:     Lansford W. Levitt, Settlement Judge
        Kolesar & Leatham, Chtd.
        Olson, Cannon, Gormley, Angulo & Stoberski
        Eighth District Court Clerk